FILED
2022 APR 8 PM 3:53
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GRAYSTONE FUNDING COMPANY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> NETWORK FUNDING, L.P.; JASON GAUTREAU; and CRISTIE NORTH, <br><br> Defendants, <br><br>———————————————— <br><br> NETWORK FUNDING, L.P.; JASON GAUTREAU; and CRISTIE NORTH, <br><br> Third-Party Plaintiffs, <br><br> v. <br><br> KIPP V. MYERS, <br><br> Third-Party Defendant. | **MEMORADUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE GRAYSTONE'S EXPERT CARL SABA AND GRANTING IN PART AND DENYING IN PART GRAYSTONE'S MOTION TO EXCLUDE DEFENDANTS' EXPERT DERK RASMUSSEN** <br><br> Case No. 2:19-cv-00383-JNP-CMR <br><br> District Judge Jill N. Parrish |

Graystone Funding Company, LLC ("Graystone") sued Jason Gautreau, Cristie North, and Network Funding, L.P. ("NFLP") (collectively, "Defendants") asserting various claims, including claims for misappropriation of trade secrets and breach of fiduciary duties. ECF No. 2. Defendants filed counterclaims against Graystone and a third-party complaint against Kipp Myers, Graystone's CEO and 90% owner. ECF Nos. 13, 63. Before the court are Defendants' Motion to Exclude Graystone's Expert Carl Saba (ECF No. 120) and Graystone and Myers's (collectively, "Graystone") Motion to Exclude Defendants' Expert Derk Rasmussen (ECF No. 127). Oral argument on the motions was held on November 30, 2021.

The court DENIES Defendants' Motion to Exclude Graystone's Expert Carl Saba and GRANTS IN PART and DENIES IN PART Graystone's Motion to Exclude Defendants' Expert Derk Rasmussen.

## BACKGROUND

Graystone sued Defendants, alleging various claims, including that Defendants misappropriated trade secrets and that Gautreau and North breached their fiduciary duties to Graystone. Graystone retained Carl Saba "to render an opinion on the diminution in the fair market value of Graystone's three branch offices" that Graystone allegedly suffered as a result of Defendants' alleged conduct. ECF No. 122 at Ex. A at 5. Saba issued a report detailing his opinions regarding the economic damages that Graystone suffered because of Defendants' conduct. Saba based his opinions on the assumption that the allegations in Graystone's complaint would be proved at trial. Defendants later deposed Saba.

Defendants filed counterclaims against Graystone and a third-party complaint against Myers, alleging eleven causes of action in total, including breach of contract and fraudulent and negligent misrepresentation. ECF Nos. 13, 63–65. Defendants retained Derk Rasmussen to render both an opinion regarding the damages that Defendants suffered because of Graystone's and Myers's alleged conduct and a critique of Saba's damages analysis. Rasmussen issued reports evaluating Defendants' damages and critiquing Saba's analysis and was later deposed.

Defendants move to exclude Saba's report and testimony and Graystone moves to exclude the entirety of Rasmussen's report and testimony regarding Defendants' damages, as well as certain portions of Rasmussen's report and testimony critiquing Saba's analysis.

## LEGAL STANDARD

The court has a "gatekeeping obligation" to determine the admissibility of expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Under Federal Rule of Evidence 702, "[a] two-part test applies to determine admissibility." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013). First, the court must "determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (quoting FED. R. EVID. 702). "Second, the court 'must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony.'" *Conroy*, 707 F.3d at 1168 (citation omitted). "[T]he court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*." *Nacchio*, 555 F.3d at 1241. "[T]he testimony must be 'based upon sufficient facts or data' as well as 'the product of reliable principles and methods' and the expert must have 'applied the principles and methods reliably to the facts of the case.'" *Id.* (quoting FED. R. EVID. 702). "The proponent of expert testimony bears the burden of showing that the testimony is admissible." *Conroy*, 707 F.3d at 1168.

That said, district courts have broad discretion in deciding whether to admit or exclude expert testimony, *see Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003), and should "liberally admit expert testimony," *Armstrong v. Sabin*, No. 2:20-cv-261-TS-DAO, 2021 U.S. Dist. LEXIS 76327, at *3 (D. Utah Apr. 19, 2021) (citation omitted); *see also Ruff v. Ensign-Bickford Indus.*, 171 F. Supp. 2d 1226, 1232 (D. Utah 2001) ("The gatekeeper inquiry under Rule 702 is ultimately a flexible determination, keeping in mind that rejection of expert testimony has been the exception rather than the rule."); *Woods v. Wills*, No. 1:03-CV-105 CAS, 2005 U.S.

Dist. LEXIS 25383, at *4 (E.D. Mo. Oct. 27, 2005) ("Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony. The Rule favors admissibility if the testimony will assist the trier of fact. Doubt regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." (internal citations and quotation marks omitted)). Under Rule 702, "[t]he standard for reliability is 'not that high,'" *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 81 (3d Cir. 2017) (citation omitted). As long as the expert "'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field'"—and the testimony is otherwise admissible—"it is up to the jury to decide whether the expert used the best or most reliable methodology, what weight to accord to his testimony and which of competing experts' opinions should be credited." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1085 (D. Colo. 2006) (quoting *Kumho Tire*, 526 U.S. at 152). Indeed, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

## ANALYSIS

### I.   Defendants' Motion to Exclude Graystone's Expert Carl Saba (ECF No. 120)

Defendants move to exclude the report of Graystone's expert, Saba, and to preclude him from testifying as an expert witness in this case. As an initial matter, Defendants do not challenge Saba's qualifications.[1] Rather, Defendants argue that Saba's report and testimony should be

---

[1] Saba, who received a Bachelor of Science degree in Business Administration and Finance from the University of California (Berkeley) and a Master of Business Administration from the University of Southern California (with honors), has over twenty-five years of experience "analyzing the financial condition of businesses, consulting to business, and in the valuation of businesses." ECF No. 122 at Ex. A at 3. He is "an Accredited Senior Appraiser (ASA) with the American Society of Appraisers (ASA), and Accredited in Business Valuation (ABV) with the American Institute of Certified Public Accountants (AICPA)." *Id.* Accordingly, the court

excluded under Federal Rule of Evidence 702 because they (1) are unreliable, (2) will not assist the trier of fact, and (3) are based on a flawed methodology. In particular, Defendants argue that "Saba did not rely upon, obtain, or consider sufficient information necessary to complete a proper damages analysis, rendering his opinions speculative, unreliable, and lacking the requisite tie to the facts of this case." ECF No. 120 at 1. The court disagrees.

A.    *Whether Saba's Report and Testimony Are Reliable*

Defendants argue that Saba's report and testimony are unreliable because they are based on insufficient facts and data. In particular, Defendants assert that "Saba failed to consider important facts and intervening factors or explanations for the damages he calculated." *Id.* at 4.

1)    Intervening Factors or Alternative Causes of Graystone's Alleged Damages

To support their contention that Saba failed to consider intervening or alternative causes of Graystone's alleged damages, Defendants note that "Saba reviewed the transcripts of only two of the twenty-two fact depositions that were conducted in this case" and that he only conducted this review *after* he prepared his report. *Id.* Defendants contend that Saba's damages analysis fails to account for critical facts—such as Myers's announcement on April 10 that Graystone was merging with NFLP, Graystone's subsequent efforts to transfer information and employees to NFLP, and the Sugarhouse and Colorado branches' previous ignorance of NFLP before the announcement. Defendants take issue with Saba's assumption that "Graystone's announcement and plans to join NFLP between April 10 and April 19 had *no causal effect*" on Graystone's damages. *Id.* at 5. Defendants likewise argue that the fact that the Sugarhouse and Colorado branches "had no knowledge of NFLP prior to" Myers's April 10 announcement "is critical

_____

concludes that Saba "is qualified 'by knowledge, skill, experience, training, or education' to render an [expert] opinion" regarding Graystone's alleged damages. *See Nacchio*, 555 F.3d at 1241 (quoting FED. R. EVID. 702).

information that clearly impacts any sort of damages analysis in this case where Graystone is accusing Defendants of causing the employees at these branches to leave Graystone." *Id.*

Defendants similarly assert that Saba did not account for the fact that "multiple employees," most notably Kathy Kassel, the Cottonwood branch's largest producer, "were planning to leave Graystone prior to . . . [Defendants'] alleged bad acts." *Id.* at 6. Defendants contend that this renders Saba's analysis unreliable because even "Saba concede[d] that if a key producing employee, such as Kassel, left Graystone independent of the alleged bad acts, his damages analysis would be impacted." *Id.*

Graystone responds that "Saba is not testifying about causation"; rather, "[h]e is a damages expert who provides the jury with an expert opinion on the damages Graystone suffered." ECF No. 146 at 12. Accordingly, he "is allowed to base his opinion on a fact or facts that are disputed" and, "even if there were considerable evidence contradicting [his] underlying assumptions, Mr. Saba's testimony is still admissible where 'his assumptions [are] not without support'" in the record. *Id.* (quoting *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1524 (10th Cir. 1984)). Graystone contends that "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Id.* (quoting *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 955 (8th Cir. 2007)). Graystone maintains that Saba's report and testimony are admissible because "the underlying assumptions on which he relied are not without support in the record." *Id.* at 14. The court agrees.

"The role of a damages expert is to calculate hypothetical damages given an assumed set of facts; so long as those assumed facts are reasonably based on the evidence in the record, such assumptions are permissible." *Brill v. Marandola*, 540 F. Supp. 2d 563, 570 (E.D. Pa. 2008); *see*

*also Rowe v. DPI Specialty Foods, Inc.*, No. 2:13-cv-00708-DN-DJF, 2015 WL 4949097, at *5 (D. Utah Aug. 19, 2015) ("An expert witness has no duty to *prove* causal links between incident and damages. An expert opines on facts which the expert assumes will be proven, and an expert can explain the bases for an opinion."). Here, Saba assumed that the facts were as Graystone alleged in its complaint. *See* ECF No. 122 at Ex. A at 5, 8–10. That is, Saba assumed that Defendants' alleged wrongful conduct, rather than Myers's April 10 announcement or Graystone employees' independent decisions to leave Graystone, caused Graystone's alleged damages, including damages associated with the Sugarhouse and Colorado branches. Saba calculated "hypothetical damages given [this] assumed set of facts." *See Brill*, 540 F. Supp. 2d at 570. If, at trial, the jury disagrees with the assumed facts on which Saba relied—if, for instance, the jury concludes that Defendants' conduct did not cause any damages related to the Sugarhouse and Colorado branches—then it can discount or altogether ignore Saba's report and testimony.

For Rule 702 purposes, the accuracy of the factual and causal assumptions underlying an expert's testimony is not at issue, so long as there is some support in the record for the expert's assumptions. *See Aspen Highlands*, 738 F.2d at 1526; *BC Tech., Inc. v. Ensil Int'l Corp.*, 464 F. App'x 689, 704 (10th Cir. 2012) (unpublished) ("The assumptions were certainly subject to debate but had sufficient evidentiary support to pass the admissibility threshold."); *Synergetics, Inc.*, 477 F.3d at 955 ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility." (citation omitted)); *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1224 (D. Colo. 2008) ("The accuracy of the assumption is not at issue for Rule 702 purposes . . . . The accuracy of the assumption is an issue for trial because it affects the weight of the opinion."). As detailed in the court's order regarding Defendants' motion for summary judgment, ECF No. 164, Graystone has produced sufficient evidence from which a

reasonable jury could conclude that Defendants' alleged wrongful conduct, rather than Myers's April 10 announcement or Graystone employees' independent decisions to leave the company, caused Graystone's alleged damages, including those related to the Sugarhouse and Colorado branches.[2]

Accordingly, the court declines to exclude Saba's report and testimony on the basis that he failed to consider these allegedly "important facts and intervening factors or explanations for the damages he calculated."[3] ECF No. 120 at 4. At trial, Defendants will have a full opportunity to attempt to undercut Saba's assumptions—and thus his analysis—through the "presentation of contrary evidence" and "[v]igorous cross-examination." *See Daubert*, 509 U.S. at 596; *see also United States v. Mitchell*, 365 F.3d 215, 234 (3d Cir. 2004) (noting that as long as an expert's "testimony rests upon good grounds, based on what is known, it should be tested by the adversary process—competing expert testimony and active cross[-]examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies" (internal quotation marks and citation omitted)).

2)      Other Omitted Important Facts

Defendants further argue that Saba's report and testimony should be excluded because, in addition to his failure to consider and incorporate into his analysis alternative explanations for

---

[2] Of course, Graystone cannot recover damages on any claims—or sub-parts of claims—for which summary judgment was granted in favor of Defendants. *See generally* ECF No. 164.

[3] Defendants argue that Saba's testimony must "be excluded given that Saba admits he ignored the extensive testimony evidence in this case that directly contradicts 'the assertion of causation.'" ECF No. 120 at 7. As indicated above, the testimony that Saba allegedly ignored—regarding Myers's April 10 announcement, the Sugarhouse and Colorado branches' ignorance of NFLP, and Graystone employees' independent intentions to leave Graystone—does not *directly contradict* his assertion (more accurately, assumption) that Defendants' alleged wrongful conduct caused Graystone's damages. As discussed at length in the court's order regarding Defendants' motion for summary judgment, ECF No. 164, based on the evidence that Graystone has produced, a reasonable jury could conclude that Defendants' conduct, and not those other factors, caused Graystone's alleged damages.

Graystone's alleged damages, he was unaware of important facts that should have been factored into his analysis. These include the facts that Graystone employees were at-will employees who were not bound by a non-compete agreement and that the information that Graystone transferred to NFLP after April 10, 2019 was not governed by any non-disclosure agreement ("NDA"). Graystone responds that Saba's analysis does account for the fact that "Graystone employees were at-will employees [who] were not bound by non-compete agreements" because it incorporates Graystone's historical level of turnover and "market multiples to Graystone's historical revenues and earnings that are net of the impact of historical turnover." ECF No. 146 at 7. Graystone further responds that "[t]he lack of an NDA is immaterial to . . . Saba's analysis because Graystone did not transfer any information that is the subject of its misappropriation claims or permit its former employees to take the trade secret information that is the subject of Graystone's claims." *Id.* at 8.

The court agrees with Graystone that it is immaterial that Saba was unaware that the information Graystone transferred to NFLP after April 10, 2019 was not governed by an NDA. The court reaches this conclusion primarily because, in deciding Defendants' motion for summary judgment, the court concluded that all of the information Graystone transferred to NFLP or its former employees—including Graystone's customer data—lost any trade secret protections on or around April 8, 2019. Accordingly, Graystone is precluded from recovering damages on the alleged misappropriation of such information after that time. Thus, Saba's calculations related to such damages are moot.

Moreover, to the extent that Defendants remain unconvinced that Saba's analysis adequately accounts for the fact that Graystone employees were at-will and did not have a non-compete agreement, the court notes that Rule 702 does not require "an expert to use the best

9

method available," *Adel v. Greensprings of Vt., Inc.*, 363 F. Supp. 2d 683, 689 (D. Vt. 2005). This alleged weakness is best challenged through Defendants' cross-examination of Saba and presentation of their own expert witness on damages at trial. *See Synergetics, Inc.*, 477 F.3d at 956. Thus, the court declines to exclude Saba's report and testimony on the basis that he was unaware of—and allegedly failed to account for—the fact that Graystone employees were at-will and not bound by a non-compete agreement and that there was no NDA governing the information that Graystone provided to NFLP.

Before concluding the reliability analysis, the court pauses to note Defendants' emphasis on *Conroy v. Vilsack*, 707 F.3d 1163 (10th Cir. 2013), *Trugreen Cos., L.L.C. v. Scotts Lawn Service*, 508 F. Supp. 2d 937 (D. Utah 2007), *Craig v. Xlear, Inc.*, No. 2:16-cv-00392-DB-EJF, 2019 U.S. Dist. LEXIS 39123 (D. Utah Mar. 11, 2019), and *Fowers Fruit Ranch, LLC v. Bio Tech Nutrients, LLC*, No. 2:11-cv-00105-TC, 2015 WL 2201715 (D. Utah May 11, 2015), to support its argument that Saba's report and testimony should be excluded because they are unreliable. Defendants' reliance on these cases is misplaced.

First, in *Conroy*, the Tenth Circuit concluded that "[t]he district court was right to exclude [the expert's] testimony" because the expert was "oblivious" to key facts. 707 F.3d at 1170. But the expert at issue in *Conroy* was not a damages expert. *Id.* at 1169–70. Rather, he was hired to render an opinion regarding whether the vacancy announcement for a position with the United States Forest Service "improperly required applicants to have a college degree." *Id.* at 1169. When rendering such an opinion about an asserted *fact*, awareness and incorporation of all material facts and circumstances into the opinion is critical. But the role of a damages expert like Saba is fundamentally different because damages experts "calculate *hypothetical* damages given *an assumed set of facts*." *See Brill*, 540 F. Supp. 2d at 570 (emphasis added). Indeed, Saba's

report and testimony should not be taken to establish what Graystone's damages *actually* were; rather, Saba's report and testimony attempt to establish what Graystone's damages were *if* Graystone can prove all of the allegations in its complaint. Because Saba's report and testimony concern *hypothetical* damages—rather than an asserted *fact*—*Conroy* is not directly on point, and the extent to which Saba was "oblivious" to key facts goes to the weight and not the admissibility of the testimony. *See Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1518 (10th Cir. 1996).

Similarly, Defendants cite *Craig* for the proposition that expert testimony should be excluded when the testimony ignores key facts and assumes the client's version of the facts. ECF No. 120 at 4, 8. However, again, the portion of the opinion to which Defendants cite does not involve an expert testifying about hypothetical damages. *See* 2019 U.S. Dist. LEXIS 39123, at *20–27. Rather, the expert in *Craig* rendered an opinion regarding whether the plaintiff "breached his fiduciary obligations." *Id.* at *8. Thus, for the same reasons discussed above, *Craig* is not directly on point.[4]

Moreover, in *Trugreen*, the court concluded that the damages expert's opinion was not sufficiently reliable, in part, because the basis for a critical figure in the damages calculation was not revealed, except for the expert stating that it was an "estimate." 508 F. Supp. 2d at 959. In

---

[4] In a subsequent portion of the *Craig* opinion, the court explicitly notes that "a damages expert may assume that certain facts will be proven," provided that the expert "makes his assumptions clear." 2019 U.S. Dist. LEXIS 39123, at *36. The court ultimately excluded the damages expert's opinion because the expert did not indicate that the key "facts" underlying his analysis were merely assumptions. *See id.* at *36–37. Here, Saba clearly identifies the assumptions underlying his model and acknowledges that the "factual background" on which he bases his analysis comes from Graystone's complaint. *See, e.g.*, ECF No. 122 at Ex. A at 8–10, 31–38 ("[Graystone] *alleges* that the financial implications of the loss of the production at the Cottonwood Branch, combined with Gautreau and North's wrongful recruiting efforts, led to Graystone's loss of the employees and production at Graystone's Sugarhouse and Colorado branches to NFLP shortly thereafter." (emphasis added)).

addition, the expert's report did not "seriously contend with potentially confounding causes of revenue gains and losses." *Id.*

Here, the situation is far different. Saba's report provides extensive explanation regarding the basis for the figures that he included in his calculations. Indeed, Defendants do not even seriously contest this, except to say that Saba's opinions are "no more than guesstimates" because he relies "on invalid assumptions and fail[s] to consider obvious alternative explanations as a result of not reviewing the evidence in this case." ECF No. 154 at 4. The court's previous discussions address why it is not persuaded by this objection.

Next, whereas the "potentially confounding causes" in *Trugreen* were undisputed, 508 F. Supp. 2d at 959–61, the "potentially confounding" or "intervening" causes to which Defendants point are hotly disputed. For instance, the parties vigorously contest whether Defendants' alleged wrongful conduct or Myers's April 10 announcement caused the alleged damages associated with the Sugarhouse and Colorado branches. If, similar to the situation in *Trugreen*, it was undisputed that Myers's announcement caused the alleged damages related to the Sugarhouse and Colorado branches, then it would certainly be inappropriate for Saba's analysis to ignore that fact. However, that is simply not the case here and, consequently, *Trugreen* is not on point.

*Fowers* is similarly unpersuasive. There, the court excluded the expert's testimony because he did not "provide[] anything from which the court [could] conclude that he properly considered relevant factors in calculating future crop yields." 2015 WL 2201715, at \*11. The expert failed to explain "the basis for his conclusions" and largely failed to provide any objective data to support them. *Id.* at \*9–\*11. In stark contrast, Saba has provided substantial data to support his conclusions, and his report goes to great lengths to explain the basis for his conclusions.

B.      *Whether Saba's Report and Testimony Will Assist the Trier of Fact*

Defendants argue that Saba's report and testimony should also be excluded because they "will not be helpful to the trier of fact" for four reasons: (1) because they do not "contain any analysis of the nexus between what he measures as damages and the parties and causes of action," (2) he assumes "that the diminution in value [of the Graystone branches] was caused by the alleged wrongdoing of Defendants," (3) "he merely prepared his damages calculation based upon what was asked of him, without performing any independent analysis of economic causation," and (4) he "made the assumption that all three branches left Graystone for NFLP because of alleged wrongful acts of the Defendants, ignoring evidence to the contrary." ECF No. 120 at 8–9.

Graystone responds that Saba's report and testimony will assist the trier of fact "by providing an expert opinion on the value of the three branches taken by Defendants. In other words, Saba will assist the jury by providing them with an estimate of damages it can use once it has found that Defendants are liable." ECF No. 146 at 17. Graystone acknowledges that Saba's analysis involves certain assumptions—such as that Defendants' conduct caused "the mass exodus of Graystone employees"—but asserts that Saba was aware of contrary evidence, such as Myers's April 10 announcement, but determined "that the issue of whether the merger announcement superseded the prior bad act was a factual dispute to be weighed by the finder of fact." *Id.* at 19–20.

"The Tenth Circuit takes a liberal approach to the question of whether proffered expert testimony will assist the jury. 'Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or

surprise favoring exclusions. The jury is intelligent enough to ignore what is unhelpful in its deliberations.'" *Cook*, 580 F. Supp. 2d at 1083 (citation omitted).

Here, the court interprets Defendants' arguments as simply a repackaging of its arguments regarding reliability. Specifically, Defendants appear to argue that, because Saba did not account for potential alternative causes of Graystone's alleged damages and assumed that the facts were as Graystone alleged in its complaint, his report and testimony are unreliable and, thus, will not assist the trier of fact. However, the court has found Saba's report and testimony sufficiently reliable for Rule 702 purposes. Consequently, the court agrees with Graystone that Saba's report and testimony "will assist the jury by providing them with an estimate of damages it can use" *if* the jury finds in Graystone's favor.[5] *See* ECF No. 146 at 17; *see also McNeese v. Access Midstream Partners, L.P.*, No. CIV-14-503-D, 2016 U.S. Dist. LEXIS 190747, at *11 (W.D. Okla. May 18, 2016) (concluding that damages expert's testimony "will assist the trier of fact in determining the issues on which he is called to testify" because there were "reasonable grounds" for the expert's conclusions). If, however, the jury concludes, for instance, that Myers's announcement was a superseding cause of some or all of Graystone's alleged damages, then it can correspondingly discount or altogether disregard Saba's analysis. *See Cook*, 580 F. Supp. 2d at 1083.

In addition, through cross-examination and contrary testimony at trial, Defendants will have the opportunity to challenge the assumptions underlying Saba's report and to attempt to persuade the jury to place little weight on Saba's analysis. *See Aspen Highlands*, 738 F.2d at

---

[5] Again, Saba's calculations will likely need to be adjusted to account for the claims, and parts of claims, on which the court has granted summary judgment in favor of Defendants. *See* ECF No. 164. However, for the remaining claims, including Graystone's claim that Defendants' conduct caused damages associated with the Sugarhouse and Colorado branches, the court concluded that a reasonable jury could find in Graystone's favor. *See id.*

1524 ("[T]he full burden of exploration of the facts *and assumptions* underlying the testimony of an expert witness [is] squarely on the shoulders of opposing counsel's cross-examination." (quoting *Smith v. Ford Motor Co.*, 626 F.2d 784, 793 (10th Cir. 1980)). Accordingly, the court declines to exclude Saba's report and testimony on the basis that they will not assist the trier of fact.

  *C. Whether Saba's Report and Testimony Are Based on Flawed Methodology*

  Defendants further argue that Saba's report and testimony should be excluded because they are based on flawed methodology. Specifically, Defendants argue that "Saba's analysis is flawed because he fails to base his analysis upon the generally accepted 'but for' expectations of Graystone, and instead erroneously assumes that Graystone had an expectation of retaining 100% of the business associated with the Cottonwood, Sugarhouse, and Denver branches." ECF No. 120 at 9. Moreover, Defendants contend that "Saba's approach ignores the impact that Gautreau and North's leaving Graystone would have on Graystone's business regardless of any allegedly unlawful conduct. In other words, Saba's methodology assumes that Gautreau and North, and their team at Cottonwood, were not permitted to leave Graystone." *Id.* at 10. Defendants further assert that, in addition to "numerous other instances of flawed methodology," Saba "completely ignores the question of personal versus institutional goodwill." *Id.*

  Graystone responds that Saba did, in fact, employ a "but for" analysis, and that the analysis evaluates the profits Graystone would have earned "but for" Defendants' alleged wrongdoings. Graystone asserts that Saba's analysis does not assume that Graystone would have retained 100% of its business because it mitigates the damages estimate "by subtracting the estimated value of loans associated with the three branches that Graystone was able to retain." ECF No. 146 at 20–21. In addition, Graystone argues that Saba's analysis does, in fact, account

for the impact that Gautreau's and North's departures would have on Graystone, as well as personal goodwill and the fact that Graystone employees were free to leave at any time, because it is based on Graystone's historical performance. It therefore "incorporate[s] normal turnover and the consequent loss of goodwill." *Id.* at 21. In short, Graystone argues that "Saba identified the incidents that are alleged to have caused the damages, analyzed the correlation between the alleged bad acts and damages, and accounted for any obvious alternative explanations," and that, as a result, his analysis is "in conformance with the AICPA's [American Institute of Certified Public Accountants] guidance for damages experts." *Id.* The court agrees and concludes that Saba's methodology is not so flawed as to warrant exclusion.

"[A] flaw in methodology does not automatically disqualify an expert opinion; the flaw must be of such substance as to create a lack of 'good grounds' for the expert's conclusions." *Estes Park Taffy Co., LLC v. Original Taffy Shop, Inc.*, No. 15-cv-01697-CBS, 2017 U.S. Dist. LEXIS 88113, at *12 (D. Colo. June 8, 2017) (citation omitted). "Whether . . . [an] expert might have done a better job is not the test" under Rule 702, *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 809 (3d Cir. 1997), and "[a] judge frequently should find an expert's methodology helpful even when the judge thinks that the expert's technique has flaws sufficient to render the conclusions inaccurate," *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 744–45 (3d Cir. 1994). Indeed, "[e]ven if the judge believes there are better grounds for some alternative conclusion, and that there are some flaws in the [expert's] methods, if there are good grounds for the expert's conclusion, it should be admitted." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) (citation omitted).

Accordingly, although the court has some concerns regarding Saba's methodology— particularly whether the historical employee turnover data adequately accounts for the impact

that Gautreau's and North's departures would have had on Graystone's business—the court does not believe that Saba's methodology is sufficiently flawed to warrant exclusion. Rather, Saba's methodology complies with AICPA's guidance for damages experts, and any shortcomings in his methodology can more appropriately be addressed at trial in front of the jury. *See Sinclair Wyo. Ref. Co. v. A&B Builders Ltd.*, No. 15-CV-91-ABJ, 2018 U.S. Dist. LEXIS 220854, at *51 (D. Wyo. Sept. 11, 2018) ("Once expert testimony has been deemed reliable, 'it is up to the jury to decide whether the expert used the best or most reliable methodology, what weight to accord to his testimony and which of competing experts' opinions should be credited.'" (quoting *Cook*, 580 F. Supp. 2d at 1085)). Thus, the court declines to exclude Saba's report and testimony on the basis that Saba used a flawed methodology.

## II.   Graystone's Motion to Exclude Defendants' Expert Derk Rasmussen (ECF No. 127)

Graystone moves to exclude the testimony of Defendants' expert, Derk Rasmussen, under Federal Rules of Evidence 403[6] and 702. Specifically, Graystone seeks to exclude Rasmussen's testimony related to: (1) his initial report, in which he presents his opinions regarding the damages associated with Defendants' counterclaims and third-party claims, *see* ECF Nos. 63–65; and (2) his rebuttal report, in which he critiques Saba's methods and opinions.[7]

---

[6] Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

[7] Graystone does not dispute that Rasmussen is qualified to render an expert opinion. Rasmussen, who earned Bachelor of Science degrees in Accounting and Finance from the University of Utah and a Master of Business Administration from Utah State University, has "over thirty-six years of experience in performing assignments involving forensic accounting, business valuations, economic damages, and reviewing the reports of others in [his] field." ECF No. 129 at 37. He is a Certified Public Accountant, and he has earned the Accredited in Business Valuation and Certified in Financial Forensics credentials from the AICPA, as well as the Accredited Senior Appraiser designation from the American Society of Appraisers and the Certified Fraud Examiner designation from the Association of Certified Fraud Examiners. Accordingly, the court

### A. *Rasmussen's Report Regarding Defendants' Alleged Damages*

Graystone argues that Rasmussen's report regarding Defendants' alleged damages should be excluded in its entirety because it is neither relevant nor reliable. In particular, Graystone contends that "[a]n expert's testimony is not relevant where it involves an issue that a jury is capable of assessing for itself, thereby becoming 'needless presentation' that should be excluded under Federal Rule of Evidence 403. Likewise, an expert's testimony is not relevant where it merely parrots or recites factual assertions or where the expert merely performs simple math." ECF No. 127 at 1–2. Because the court has granted summary judgment in favor of Graystone on Defendants' claims I and VI–XI, the court addresses Graystone's arguments only with respect to Defendants' surviving claims.

### 1) Claim II: Breach of Contract for Unpaid Commissions

Graystone argues that Rasmussen's opinion that "Gautreau and North are owed a total of $13,288.35 for unpaid commissions from April 20, 2019 through April 30, 2019 and Gautreau is owed $15,853.41 for unpaid commissions from May 1, 2019 through May 9, 2019" should be excluded because "it is merely a recital of Gautreau and North's factual allegations and an application of simple math." ECF No. 127 at 4. Graystone further argues that the opinion should be excluded as unreliable because "Rasmussen does not follow his own methodology" which, according to Graystone, would require Rasmussen "to incorporate the fact that Gautreau and North accepted Myers's offer for payment of $39,556.34 to Gautreau and North in exchange for their release of all commission and wage claims against Graystone." *Id.* at 5.

---

concludes that Rasmussen "is qualified 'by knowledge, skill, experience, training, or education' to render an [expert] opinion" regarding Defendants' alleged damages and Saba's expert opinion. *See Nacchio*, 555 F.3d at 1241 (quoting Fed. R. Evid. 702).

In response, Defendants argue that Rasmussen's opinion is relevant, reliable, and helpful to the trier of fact, and that it is "simply not the case" that Rasmussen merely recites Defendants' factual assertions and performs "simple math." ECF No. 153 at 6, 8. Specifically, Defendants assert that Rasmussen based his opinion "on communications with Defendants, exhibits and documents in the record, and case documents, including deposition[] transcripts and pleadings," and that he performed more than "simple math" because "[h]e identified the necessary categories of documents from which to draw the amounts, discussed those amounts with Defendants where necessary, and computed a damages figure." *Id.* Defendants further assert that "there is no requirement that an expert's calculations be of a particular complexity, such that a fact finder is not capable of performing such calculation." *Id.* at 8. Moreover, Defendants contend that Rasmussen's opinion is reliable because Rasmussen calculated Defendants' damages using "generally accepted damage methodology." *Id.*

The court concludes that Rasmussen's testimony regarding claim II should be excluded. Although Defendants assert that Rasmussen does more than recite their factual assertions and perform simple math, the court disagrees. Rasmussen states that it is his opinion "that the April 20, 2019 through April 30, 2019 commission amount outstanding for Mr. Gautreau and Ms. North totals $13,288.35." ECF No. 127-2 at 15. To derive this value, Rasmussen simply adopts Gautreau's calculation of the commissions that he and North were allegedly owed for April 2019 ($52,844.69) and subtracts the $39,556.34 that it is undisputed Myers and Graystone paid Gautreau and North in commissions for April 2019.

Apart from simple subtraction, it does not appear that Rasmussen conducted any independent analysis with respect to the April 2019 commissions. Indeed, he merely recites *Gautreau's* calculation of the April 2019 commissions, *see id.* at 14 ("Mr. Gautreau calculated

April 2019 commission owed to be $52,844.69."), and then subtracts an undisputed figure from that amount. Thus, Defendants have not persuaded the court that Rasmussen's testimony regarding the April 2019 commissions would "help the trier of fact to understand the evidence or to determine a fact in issue." *See* FED. R. EVID. 702; *see also Griego v. State Farm Mut. Auto. Ins. Co.*, 839 F. App'x 258, 261 (10th Cir. 2020) (unpublished) ("Under Federal Rule of Evidence 702, the party offering expert testimony bears the burden of establishing its admissibility."); *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994) ("[U]nder Fed. R. Evid. 702 'the "touchstone" of admissibility is helpfulness to the trier of fact.'" (citation omitted)); *see also Triad Cap. Mgmt., LLC v. Priv. Equity Cap. Corp.*, No. 07 C 3641, 2010 U.S. Dist. LEXIS 143454, at *10–11 (N.D. Ill. Nov. 22, 2010) (barring an expert's testimony because "[a] jury can do simple math and read"); *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, No. 3:09cv1546 (MRK), 2010 U.S. Dist. LEXIS 95092, at *8 (D. Conn. Apr. 9, 2010) ("There is absolutely no reason why the jury cannot do [subtraction] for itself; in fact, juries do these types of calculations all the time.").

Similarly, regarding the commissions that Gautreau is allegedly owed for May 1, 2019 through May 9, 2019, Rasmussen "assume[s] that an April 2019 daily commission rate of $1,761.49 is comparable to what Mr. Gautreau would have received for the first 9 days in May of 2019," which totals $15,853.41. ECF No. 127-2 at 15. Again, this value is derived from *Gautreau's* calculation of commissions for April 2019. To calculate Gautreau's alleged damages, Rasmussen merely divides Gautreau's figure by 30—the number of days in April—and then multiplies that value by 9, the number of days Gautreau was employed by Graystone in May 2019. The court is not persuaded that Rasmussen's testimony would help the trier of fact perform

this simple calculation.[8] In addition, Rasmussen provides no explanation or justification for his assumption that the May 2019 commissions will mirror the April 2019 commissions. This is especially concerning because the value that Gautreau calculated for the April 2019 commissions combined both his and North's commissions, whereas the May 2019 commissions should be for Gautreau alone. Rasmussen has provided no explanation for his assumption that Gautreau's May 2019 commissions would be similar to Gautreau and North's *combined* commissions for April 2019. Thus, the court grants Graystone's motion to exclude Rasmussen's expert testimony regarding claim II.

2)       Claim III: Breach of Contract Regarding Sublease Agreements

Graystone argues that Rasmussen's opinion regarding Defendants' alleged damages associated with claim III should be excluded because the opinion "is merely a recital of NFLP's facts, a compilation of what appear to be NFLP's bills, and a simple addition of the bills." ECF No. 127 at 6. In response, Defendants present the same arguments they made with respect to claim II.[9]

"An expert witness must add something to the jury's understanding, and 'when an expert witness is not in a better position than the fact finder to render an opinion on a matter, it is not error to exclude that witness' testimony.'" *Kane v. Lewis*, Civil No. L-08-1157, 2010 U.S. Dist.

---

[8] Defendants cite *WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1040 (8th Cir. 2011), for the proposition that there is not "an implicit requirement in Fed. R. Evid. 702 for the proffered expert to make *complicated* mathematical calculations." The court agrees. However, in *WWP, Inc.*, the district court found that the expert witness "analyz[ed] a substantial amount of financial data." *Id.* at 1039. Here, it is not clear to the court that Rasmussen analyzed *any* data in deriving his opinion regarding unpaid commissions. Rather, he simply adopted Gautreau's own calculations and then performed simple math. Thus, Defendants have failed to carry their burden of convincing the court that Rasmussen's testimony would help the trier of fact. *See* FED. R. EVID. 702; *Griego*, 839 F. App'x at 261.

[9] Because Defendants' arguments regarding claims I–V are not clearly differentiated, the court assumes that Defendants present the same arguments for each of those claims.

LEXIS 164819, at *3 (D. Md. Dec. 7, 2010) (quoting *Noland v. French*, 134 F.3d 208, 217 (4th Cir. 1998)); *see also United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996) ("[A]n expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate [his] opinion; the opinion must be an *expert* opinion (that is, an opinion informed by the witness's expertise) rather than simply an opinion broached by a purported expert. Unless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403." (internal citation and quotation marks omitted)). Here, Rasmussen's calculation appears to be based on a collection of NFLP's bills, which Rasmussen sums. Apart from adding a few values together, it is not apparent that Rasmussen has conducted any other analysis with respect to this claim. Because Defendants have failed to persuade the court that Rasmussen's testimony regarding claim III would "add something to the jury's understanding"—or that the testimony "draws on some special skill, knowledge, or experience"—the court grants Graystone's motion to exclude Rasmussen's testimony regarding claim III. *See Hall*, 93 F.3d at 1343; *Kane*, 2010 U.S. Dist. LEXIS 164819, at *3.

> 3)   Claims IV and V: Fraudulent and Negligent Misrepresentation Regarding Graystone's Ability to Pay Lease Penalty

Graystone argues that Rasmussen's opinion regarding Defendants' alleged damages associated with claims IV and V should be excluded "because it is nothing more than a recital of Gautreau and North's factual allegations and prejudices Graystone by lending unwarranted credibility, or an expert veneer, to the claim." ECF No. 127 at 7. In response, Defendants present the same arguments that they presented with respect to claims II and III.

In his report, Rasmussen states that he has "reviewed emails sent from Mr. Gautreau to Mr. Myers calculating $25,000 in bonus reductions related to Cottonwood payments." ECF No.

127-2 at 15. Rasmussen further states that he has "not seen any indication such payments were paid back to Mr. Gautreau or Ms. North" and, thus, concludes that the damages associated with these claims total $25,000. *Id.* at 15–16. The court cannot identify any expert analysis that Rasmussen conducted to reach his conclusion. Indeed, Rasmussen does not even appear to perform simple mathematical calculations—as he did for claims II and III. Rather, Rasmussen's analysis appears to be a mere recital of Gautreau and North's allegations. *See Deem v. Baron*, No. 2:15-cv-00755-DS, 2020 WL 114138, at *13 (D. Utah Jan. 10, 2020) ("[E]xperts may not merely parrot or recite factual evidence, without offering a valid expert opinion based on such evidence." (citation omitted)). It is unclear to the court how Rasmussen's testimony would add anything to the jury's understanding or draws on any "special skill, knowledge, or experience." *See Hall*, 93 F.3d at 1343; *Kane*, 2010 U.S. Dist. LEXIS 164819, at *3. At oral argument, Defendants' counsel essentially conceded as much. Therefore, the court grants Graystone's motion to exclude Rasmussen's testimony regarding claims IV and V.

B.      *Rasmussen's Rebuttal Report*

Graystone moves to exclude portions of Rasmussen's rebuttal report, in which he critiques Saba's report and testimony. Specifically, Graystone seeks to exclude

> (i) Rasmussen's opinions from pages four (4) through the top of page 19 of the Rasmussen Rebuttal, and other portions of the Rebuttal where Rasmussen critiques Saba's Report by arguing that Saba failed to account for intervening factors, made unsupported or implied assumptions, or failed to establish a sufficient causal nexus between the alleged wrongdoings and Saba's damages opinion; (ii) Rasmussen's opinions on the standard or methodology a damages expert is required to follow; (iii) Rasmussen's opinions where he makes assertions of facts or provides a simple recitation of Defendants' facts or case arguments; and (iv) Rasmussen's opinions where he weighs the credibility of testimony, witnesses, or evidence, or opines on the probativeness of evidence.

ECF No. 127 at 17. The court addresses each category in turn.

1)  Rasmussen's Opinions Regarding Saba's Alleged Failures With Respect to Intervening Factors, Assumptions, and Causal Nexus

Graystone moves to exclude Rasmussen's opinions that Saba's analysis (1) failed to incorporate intervening factors, (2) relied on unsupported assumptions, and (3) failed to establish a sufficient causal link between Defendants' alleged wrongdoing and Graystone's alleged damages. At bottom, Graystone's argument is that Rasmussen's opinions are "nothing more than a presentation of the defense masquerading as an expert analysis," and that Rasmussen's critiques of Saba's analysis are recycled versions of those that were largely excluded by the district court in a prior case from this district where he had been designated as an expert, *see Rowe*, 2015 WL 4949097. ECF No. 127 at 12, 16–17. Defendants respond that "[a]ccounting for intervening factors and other possible explanations is part of a proper damage expert['s] opinion," and that Graystone misreads the holding in *Rowe*. ECF No. 153 at 15. According to Defendants, "Rasmussen was allowed to testify and critique the opposing expert's assumptions and factors the opposing expert did not consider" in *Rowe*. *Id.* at 17. Defendants contend that "[t]his is exactly what Rasmussen has done in this case." *Id.*

As Graystone's counsel conceded at oral argument, the identification of a damages expert's assumptions is a legitimate function for a rebuttal expert witness. *See Rowe*, 2015 WL 4949097, at *4; *see also Slicex, Inc. v. Aeroflex Colo. Springs, Inc.*, No. 2:04-cv-615-TS, 2006 U.S. Dist. LEXIS 46775, at *9–10 (D. Utah July 11, 2006) (approving of the holding in *KW Plastics v. United States Can Co.*, 199 F.R.D. 687 (M.D. Ala. 2000), in which "[t]he rebuttal expert was going to challenge the methodology and assumptions used by defendant's damages expert" and "[t]he court held that the rebuttal expert's testimony was admissible to inform the jury of the criticisms of the damages expert's report"). Indeed, "a well-accepted way to criticize damages estimates" is for a rebuttal expert to "testify that, while the expert's report implicitly

assumes (or erroneously fails to consider) facts *X*, *Y*, and *Z*, the expert's analysis is seriously flawed if the jury does not accept *X*, *Y*, and *Z* as true." *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09-61490-Civ-COOKE/TURNOFF, 2011 U.S. Dist. LEXIS 62969, at *17 (S.D. Fla. June 7, 2011) (internal alterations and citation omitted). Indeed, in *Rowe*, Rasmussen was permitted to testify to the assumptions that the damages expert made in his analysis. 2015 WL 4949097, at *6. Accordingly, the court declines to exclude Rasmussen's opinions regarding the assumptions underlying Saba's analysis and how different assumptions would affect the damages calculation. In addition, the court declines to exclude Rasmussen's opinions regarding factors that Saba allegedly failed to consider or include in his analysis, and how those would affect the damages calculation.

That said, the court will not permit Rasmussen to refer to Saba's assumptions as "unsupported assumptions" or "erroneous assumptions"—as opposed to simply "assumptions"—because the conclusion that assumptions are "unsupported" or "erroneous" involves weighing facts, which is primarily the responsibility of the jury, not an expert. *Id.* at *5 ("But an expert is not to opine on the weight of the facts or take a principal role in sifting, weighing and reciting them for the jury."). In addition, to the extent that Rasmussen uses the term "intervening factor" to refer to a factor that, according to Rasmussen, extinguishes Defendants' liability, Rasmussen is not permitted to use the term, as it is improper for an expert to state legal conclusions. *See Pioneer Ctrs. Holding Co. ESOP & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1342 (10th Cir. 2017) ("[A]n expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts. This type of opinion does not aid the jury in making a decision, but rather attempts to substitute [the expert's] judgment for the jury's." (internal citations and quotation marks omitted)); *United States v. Jensen*, 608 F.2d 1349, 1356

(10th Cir. 1979) ("[A]n expert witness cannot state legal conclusions by applying law to the facts.").

Similarly, as discussed with respect to Defendants' motion to exclude Saba's report and testimony, it is not a damages expert's responsibility to establish causation, and the court has already concluded—in deciding Defendants' motion for summary judgment—that a reasonable jury could find that Defendants' alleged unlawful conduct caused Graystone's alleged damages. ECF No. 164. Therefore, while the court reiterates that Rasmussen may testify to the assumptions underlying Saba's analysis—including Saba's assumption that Defendants' conduct caused the damages that he calculated—Rasmussen may not testify to his opinion that there is an insufficient causal nexus between Defendants' alleged wrongful conduct and Graystone's alleged damages, as such testimony comes impermissibly close to "usurping the province of the jury by telling it what result should be reached." *See Jensen*, 608 F.2d at 1356.

In sum, with the limitations discussed above, the court will allow Rasmussen's opinions regarding the assumptions underlying Saba's analysis, as well as factors that Saba allegedly failed to consider or include in his analysis. But the court excludes Rasmussen's opinion that Saba failed to establish a sufficient causal nexus between Defendants' alleged wrongdoing and Graystone's alleged damages.

2)      Rasmussen's Opinions Regarding the Standard or Methodology Damages Experts Are Required to Follow

Graystone moves to exclude Rasmussen's opinions regarding the standard or methodology damages experts are required to follow. Both parties fill many pages discussing *Rowe*, 2015 WL 4949097, in which the district court excluded much of Rasmussen's expert testimony, including his testimony regarding the role of damages experts. *See id.* at *5 ("[Rasmussen] twists this citation about blind acceptance of others' conclusions into the assertion

that 'an expert has a duty to understand and prove that a causal link exists between the incident and each of the damages elements,' and that 'an expert is specifically precluded from relying upon an assumption that economic causation exists.' His assumption of a duty to 'prove' is unfounded." (citation omitted)). But *Rowe* is not binding precedent on the court, and the court must examine the facts of this specific case.

Here, Defendants' do not address Rasmussen's opinions regarding the standard or methodology damages experts are required to follow except to note that "[a]ccounting for intervening factors and other possible explanations is part of a proper damage[s] expert['s] opinion" and that "Rasmussen's opinions are not premised on an affirmative duty of Saba to prove causation." *See* ECF No. 153 at 15–18. As the proponent of Rasmussen's expert testimony, Defendants "bear[] the burden of showing that the testimony is admissible." *See Conroy*, 707 F.3d at 1168. Therefore, Rasmussen is barred from testifying to his opinions regarding the standard or methodology damages experts are required to follow, except that, when providing his opinions regarding the assumptions underlying Saba's analysis and the factors that Saba allegedly failed to consider, Rasmussen may testify to his opinion that damages experts must consider intervening factors and other possible explanations when conducting a damages analysis.[10]

3) Rasmussen's Assertions of Fact and Recitations of Defendants' Arguments

Graystone next moves to exclude Rasmussen's opinions "where he makes assertions of facts or provides a simple recitation of Defendants' facts or case arguments." ECF No. 127 at 17.

---

[10] The court also excludes Rasmussen's opinion that Saba's report and testimony will not "assist the trier of fact" because they are unreliable. *See* ECF No. 127 at Ex. B at 4, 11. That is a legal conclusion for the court to determine under Federal Rule of Evidence 702. *See United States v. Archuleta*, 737 F.3d 1287, 1296 (10th Cir. 2013) ("Rule 702 requires *a district court* to 'satisfy itself that the proposed expert testimony . . . will assist the trier of fact, before permitting a jury to assess such testimony.'" (emphasis added and citation omitted; alteration in original)).

Graystone contends that Rasmussen's opinions "do not assist the trier of fact because Rasmussen merely parrots Defendants' alternative theories of causation and characterizes them as other 'intervening factors' that should have been incorporated into Saba's Report" and adopts Defendants' position on disputed facts. *Id.* at 13, 15. Defendants respond that "[t]he intervening factors disclosed in Rasmussen's Rebuttal and his deposition were developed independently from any claims or assertions made by Gautreau and North and do not include any conflicting interpretations of the facts in this case." ECF No. 153 at 16. Moreover, according to Defendants, "[t]he fact that some of Rasmussen's intervening factors bare [sic] a resemblance to assertions offered by Gautreau and North is irrelevant." *Id.*

"[E]xperts may not merely parrot or recite factual evidence, without offering a valid expert opinion based on such evidence." *Deem*, 2020 WL 114138, at *13 (citation omitted). Indeed, "[a]n expert witness must add something to the jury's understanding," *Kane*, 2010 U.S. Dist. LEXIS 164819, at *3, because "[u]nless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403," *Hall*, 93 F.3d at 1343. Accordingly, to the extent that Rasmussen's opinions assert facts or "simple recitation[s] of Defendants' facts or case arguments," ECF No. 127 at 17, the court grants Graystone's motion. However, as discussed with respect to Saba's report and testimony, a damages expert is permitted "to calculate hypothetical damages given an assumed set of facts." *See Brill*, 540 F. Supp. 2d at 570. Thus, Rasmussen may opine that Graystone's damages would be a certain amount *assuming* that Defendant's version of the facts is established.

4)  Rasmussen's Opinions That Involve Weighing Evidence

Graystone moves to exclude Rasmussen's opinions "where he weighs the credibility of testimony, witnesses, or evidence, or opines on the probativeness of evidence." ECF No. 127 at 17. Graystone argues that Rasmussen "is presenting Defendants' theory of the case, weighing the facts to arrive at a conclusion that supports Defendants' position, and opining that Saba's Report is unreliable because it does not reach the same conclusion." *Id.* at 15. Defendants do not directly respond to this particular argument.

As discussed above, an expert may not weigh evidence or determine credibility, *see Rowe*, 2015 WL 4949097, at *5; *see also United States v. Hill*, 749 F.3d 1250, 1263 (10th Cir. 2014) ("[A]n expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility." (citation omitted)). The court therefore grants Graystone's motion to the extent that Rasmussen's opinions "weigh[] the credibility of testimony, witnesses, or evidence, or opine[] on the probativeness of evidence." *See* ECF No. 127 at 17.

***

In sum, the court grants Graystone's motion to exclude Rasmussen's rebuttal opinions that (1) Saba's analysis failed to establish a sufficient causal nexus between Defendants' alleged wrongdoing and Graystone's alleged damages, (2) opine on the standard or methodology that damages experts are required to follow,[11] (3) constitute assertions of facts or simple recitations of Defendants' case arguments, and (4) weigh the evidence or are determinations of credibility. The court denies Graystone's motion to exclude Rasmussen's rebuttal opinions to the extent that they involve a critique and analysis of the assumptions underlying Saba's analysis and the factors that

---

[11] But Rasmussen may opine that damages experts must consider intervening factors and other possible explanations when conducting a damages analysis.

29

Saba allegedly failed to consider or include in his analysis, and how such assumptions and omitted factors would impact the damages calculation.

## CONCLUSION AND ORDER

The court rules as follows:

1. The court DENIES Defendants' Motion to Exclude Graystone's Expert Carl Saba (ECF No. 120).

2. The court GRANTS IN PART and DENIES IN PART Graystone's Motion to Exclude Defendants' Expert Derk Rasmussen (ECF No. 127). The court grants Graystone's motion to exclude Rasmussen's opinions regarding Defendants' alleged damages. The court grants in part and denies in part Graystone's motion to exclude Rasmussen's rebuttal opinions. The motion is granted to the extent that Rasmussen's rebuttal opinions involve (1) the opinion that Saba's analysis failed to establish a sufficient causal nexus between Defendants' alleged wrongdoing and Graystone's alleged damages, (2) opinions regarding the standard or methodology that damages experts are required to follow (with the exception of the opinion that damages experts must consider intervening factors and other possible explanations when conducting their analyses), (3) assertions of facts or simple recitations of Defendants' arguments, and (4) weighing the evidence or determinations of credibility. The motion is denied to the extent Rasmussen's rebuttal opinions involve a critique and analysis of the assumptions underlying Saba's analysis and the factors that Saba allegedly failed to consider or include in his analysis, and how such assumptions and omitted factors would impact the damages calculation.

DATED March 30, 2022.

BY THE COURT

_____

Jill N. Parrish
United States District Court Judge